UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-20494-Cr-SCOLA

UNITED STATES OF AMERICA,
        Plaintiff,
vs.

RUBEN PUSHAINA,
        Defendant.
_____/

## CORRECTIONS AND OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND INCORPORATED SENTENCING MEMORANDUM

RUBEN PUSHAINA,  a/k/a Ruben Pushiana, through undersigned counsel files the following corrections and objections to the Presentence Investigation Report (PSI) and Sentencing Memorandum.

## CORRECTIONS

The following corrections should be made to the PSI as noted.

**PART C.   OFFENDER CHARACTERISTICS, Personal and Family Data - Page 9, Paragraph 38**

Mr. Pushaina has a previous arrest in this country for the same offense and therefore, there is a pre-existing PSI prepared by a United States Probation Officer in the Middle District of Florida that appears to be the source of much of the information of the current PSI.  However, it is incomplete and dated therefore, the current PSI should be corrected to reflect the following information.

Mr. Pushaina was born into the Wayuu Tribe in La Guajira, Colombia.  The

1

Wayuu Tribe is recognized nation of Indigenous People that live in Colombia and parts of Venezuela. Therefore, where the current Paragraph 38 simply says: Mr. Pushaina was born in La Guajira, Colombia, it should be corrected to read:

> Mr. Pushaina is a Wayuu citizen which is to say, he was born within territorial district of Guajira, Colombia but is a member of the Indigenous Tribe of the Wayuu. The Wayuu are spread between La Guajira province in Colombia and the state of Zulia in Venezuela, home to the ancestral sacred territory. They are the largest indigenous community in both countries. Therefore, while he was born within the boundaries of Colombia, he is from the Wayuu Nation.

**PART C.   OFFENDER CHARACTERISTICS, Personal and Family Data - Page 10, Paragraph 41 and 42**

The information in Paragraph 41 describing his children is dated and incorrect. He has had a total of six (6) children, two of which have passed away, and one that is expected soon.  His children are:  Diana, age 41 at the time of her death last September from cancer; Joana, age 38; Ruben, age 21 at the time of his death this year from suicide; Armando, age 19; Edgar, age 15; and Ruben, age 14.

Regarding his residential history, the PSI notes that he did not provide any information about his residential history.  However Undersigned counsel was with the defendant during his interview for the PSI and he reported being a member of the Wayuu tribe. However, more was discussed perhaps because the probation officer assumed  (as did undersigned counsel) that it was included in the previous PSI (which it was not).

2

The information about his membership and residence among the Wayuu Tribe of Indigenous people should be noted in the PSI.

## OBJECTIONS

**PART A.   THE OFFENSE, Offense Level Computation: Pages 6, Paragraphs 18-24: Safety Valve and Role in the Offense.**

Mr. Pushaina objects to the PSI's failure to reduce the Base Offense Leve (BOL) by two (2) points pursuant to the "Safety Valve" as found in §5C1.1. He does not have more than one criminal history point, did not use violence or credible threats of violence, the offense did not result in death or serious bodily injury, he was not an organizer, leader, manager or supervisor, and he has provided a statement to the government.

The PSI indicates that while he qualifies for Safety Valve, that his prior conviction prohibits a 2-point reduction.  That is simply not one of the criteria that the court can consider in applying Safety Valve.

In addition, Mr. Pushaina objects to the PSI's failure to attribute a Minor Role for his role in the offense pursuant to U.S.S.G. §3B1.2(a) or (b).  Mr. Pushaina was a crew member aboard a go-fast vessel (GFV) in international waters. He was at the complete direction of the people involved in organizing and running the trip. Nowhere in the discovery that was provided, nor any subsequent investigation that undersigned counsel has been made aware, was Mr. Pushaina identified as a captain, leader, organizer, manager, investor, or otherwise in charge of the boat.

Title 46 cases in the Southern District alone, have highlighted the fact that most often, the "crew members" that are aboard the boats with the loads of narcotics are poor, underprivileged, fishermen from tiny towns in the coastal areas of Colombia, Ecuador or Venezuela. *See infra.* The individuals who are in charge and stand to make the money are nowhere to be found while the individuals taking the on the boats, they are the ones who escort the narcotics and risk being detected, arrested or dying at sea. Mr. Pushaina is one of those lowly individuals who was taking the risks and getting none of the profits in this case.

There is absolutely no evidence that Mr. Pushaina was anything other than a disposable individual to the persons who organized this unlawful trip. He was not in charge of anything in this trip, he did not have any authority over the others, nor did he recruit anyone. He was nothing more than the lowest level crew member doing what he was ordered around to do. In every way, he fits the profile of a minimal participant or at least, a minor participant in a drug organization and should receive a reduction as a minor or minimal participant.

In a case like the instant one, *United States v. Juan Gonzalez Casteneda, et. al.,* 11-10020-CR-KMM, eight defendants were caught aboard a vessel subject to the jurisdiction of the United States with 402 kilograms of cocaine. [DE 1]. From a review of the docket, the government recommended, and the Court approved, two level minor role reductions for six of the eight defendants: Garcia, Teran, Romero, Barrio, Hernandez and Camano.

4

In *United States v. Visbal et. al.*, 12-201317-CR-JEM, six defendants were interdicted aboard a vessel subject to the jurisdiction of the United States with 113 kilograms of cocaine and 67 kilograms of marijuana. [DE 1]. The government recommended, and the Court approved, minor role reductions for defendants Chica-Castano and Barrios and four level minimal participant reductions for defendants Moya and Milanes.

In *United States v. Ernesto Cana Morales, et. al.,* 14-20800-CR-JAL, four defendants were interdicted on a GFV with over 700 kilograms of cocaine. All four of those defendants, including the captain, were given a minor role reduction.

In *United States v. Hector Jimenez-Carballo, et. al,* 21-20581-Cr-Gayles, four defendants were interdicted on a GFV with 237 kilograms of cocaine and indicted for the same charges as here. [DE 14]. All four of those defendants were given a minor role.

If the Court sustains Mr. Pushaina's objection and awards a minimal or minor role reduction, the Base Offense Level (BOL) and subsequent calculation would be as follows:

| | |
|---|---|
| BOL: | 36 |
| §2D1.1(a)(5) Adj. | - 3 |
| Adjusted BOL: | **33** |
| Acceptance of Responsibility Resp. | - 3 |
| | **30** |
| Safety Valve Reduction | -2 |
| Adjusted BOL | **28** |

5

Minimum Role or Minor Role 3B1.2, n.6          -2 or -4

Total Adjusted BOL                              **26 or 24**

## MOTION FOR VARIANCE

Should the court find that the Guideline calculations as currently articulated in the PSI are correct and appropriate, undersigned counsel urges this court to nevertheless consider reducing the defendant's sentence based on the §3553 factors.

In reaching an applicable sentence, the Court must consider all the factors delineated in 18 U.S. Code §3553(a)[1]. For the following reasons that are contemplated by said section, Mr. Pushaina submits a variance is warranted.

---

[1] **(a)Factors To Be Considered in Imposing a Sentence.—**The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed—

    **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    **(B)** to afford adequate deterrence to criminal conduct;

    **(C)** to protect the public from further crimes of the defendant; and

    **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

**(3)** the kinds of sentences available;

**(4)** the kinds of sentence and the sentencing range established for—

    **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

        **(i)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

        **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced;

**(5)** any pertinent policy statement—

    **(A)** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    **(B)** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.[1]

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

As indicated above, Mr. Pushaina is not simply a person born in Colombia as there is a significant difference between a person born in Colombia and, a person born into an Indigenous Tribe living in Colombia.

According to the DANE (the Colombian statistics bureau) 2005 Census, 44.9% of the population of the Department of La Guajira was indigenous, mostly belonging to the Arhuaco, Koguis, Wiwa, and Wayuu tribes. The Afro-Colombian population represents 7.5%. The remaining 47.6% of the population did not consider itself part of a particular ethnic group.[2] The department's indigenous population is the largest of any Colombian department and represents 20.2% of the national total of indigenous people. There are 32 states in Colombia, and according to the Central Bank of Colombia, Guajira produces only 1% of the country's GNP, only behind the Amazon region and regions still primarily controlled by the revolutionary group known as the armed revolutionary forces of Colombia, known locally as Fuerzas Armadas Revolucionarias de Colombia (FARC).[3]

Nothing in this current PSI or the prior PSI used to sentence Mr. Pushaina in the Middle District, mentions the unique circumstances of Mr. Pushaina's nationality and his unique circumstances. Furthermore, the prior PSI, and therefore the current PSI, never addressed the conditions of Guajira and, more importantly, the members of the indigenous groups of Guajira.

---

[2] https://en.wikipedia.org/wiki/Riohacha

[3] https://www.banrep.gov.co/es/estadisticas/producto-interno-bruto-pib

Ignoring this background in considering Mr. Pushaina's possible sentence would be the same as ignoring the impact of our own Indigenous Population's exposure to the criminal justice system. See, https://www.prisonpolicy.org/blog/2021/10/08/indigenouspeoplesday/.

In reviewing the prior PSI, it appears the court in the Middle District was never informed of Mr. Pushaina's unique upbringing, heritage, and the challenges that heritage might present in our modern world. For example, Mr. Pushaina speaks Spanish but it is not his native language. His native language is *wayuunaiki*. It is part of the Arawak language family predominant in different parts of the Caribbean. There are small differences in dialect within the region of La Guajira: the northern, central or southern zones. So, Mr. Pushaina's ability to understand Spanish, or our system in the Spanish language, brings other complications.

Also, the Wayuu justice system differs from the Western/Ango-Saxon system significantly in that there is no real concept of punishment rather, remedy. Someone accused of wrongdoing is obligated to return goods or services to the victim to place them back to their original state. There is no concept of violent punishment or incarceration. See, http://www.articulationmagazine.com/maunnaa/. Violence comes to their communities from the surrounding conflicts with the FARC or the narcotrafficking.

These differences really should not only be reflected in his background information but also, in considering a variance in his sentence. Mr. Pushaina lives in

8

a world between Western modern society, the world of the FARC, and the world of the Narco-growers that control many of the areas of Colombia. https://www.crisisgroup.org/latin-america-caribbean/andes/colombia/87-deeply-rooted-coca-eradication-and-violence-colombia;https://www.gpdpd.org/en/countries/colombia-prototyping-for-a-green-transformation#:~:text=Coca%20cultivation%20pushes%20the%20so,activities%20such%20as%20cattle%20ranching.

Mr. Pushaina was released in May, 2022. He came home to find his daughter Diana dying of cancer.  There was no money to help her. She had been afflicted with cancer (which was noted in the prior PSI) but upon arriving back to his community, she was suffering. He cared for her around the clock. There was little money for medicines but even with medicines, she was in the final stages of the ravages of her cancer.

She died on September 11, 2022. Mr. Pushaina went to a Colombian businessman (meaning, non-tribe member) for a loan to pay for her cremation and death ceremony.  He didn't have the option to go to a bank for a loan, that is not an option in the most rural areas of an Indigenous Tribal area. He received the money from the Colombian businessmen but when it came time to pay it back, he simply did not have it. The obvious and usual option was provided:  he needed to participate in a drug trip or pay the money back. His was a Hobson's choice which is to say, not

9

really a choice at all. He agreed to take another trip, this time because he could not pay back the loan.

The court should consider the very significant difference between Mr Pushaina's circumstances and persons who live in more Western (or modern) cultures than Mr. Pushaina. For these reasons, Mr. Pushaina respectfully requests this court vary down from the current sentence.

RESPECTFULLY SUBMITTED
CELESTE SIBLESZ HIGGINS, ESQ.

/s/ *Celeste Siblesz Higgins*
Florida Bar No. 909718
2525 Ponce De Leon Blvd, Suite 300
Coral Gables, Florida 33134
Tel: (786) 643-8263
E-Mail: celeste@chigginslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2023, undersigned electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Celeste S. Higgins*

10