UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20494-Scola

UNITED STATES OF AMERICA,
                    Plaintiff,

v.

WILFREDO ROBLES,
                    Defendant.

_____/

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Wilfredo Robles, through counsel, respectfully requests that the Court: (1) concur with the United States' concession that Mr. Robles qualifies for safety valve relief and (2) impose a sentence of 51 months' imprisonment. A sentence of 51 months would reflect Mr. Robles's limited role in the conspiracy[1] and would adequately address the factors outlined in § 3553(a).

### I.    Mr. Robles' role in the conspiracy is minor.

The Government's omnibus response ignores the plain text of §3B1.2 and its accompanying commentary. Instead, it cites *De Varon*—a case from 1999—and other pre-2015 guideline amendment cases to argue that the Court should not consider a minor role adjustment because "the defendant is being held accountable only for the quantity of cocaine that he possessed" and that quantity happens to be "large." (D.E. 49 at 5.) Under the Government's reading of *De Varon*, no drug courier would ever be

_____

[1] Mr. Robles's role in the conspiracy is discussed in his objections to the Draft PSI. (D.E. 47.)

eligible for a minor role adjustment. But Application Note 3(A) is clear: "A defendant who is convicted of a drug trafficking offense, whose participation in the offense was limited to transporting [] drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline." Amendment 794, which changed and added language to Application Note 3, was adopted by the Sentencing Commission in 2015 because "mitigating role is applied inconsistently and more sparingly than the Commission intended." USSG, Suppl. to App'x C at Amend. 794 (2015). The Sentencing Commission was specifically concerned with the inconsistent application of the reduction to drug defendants who performed low-level functions—like couriers. *See id.*

But even if the Court credits *De Varon* and its pre-2015 progeny, the relevant conduct in this case, as defined in §1B1.3, is *not* identical to Mr. Robles' actual conduct and thus the broader scheme *is* relevant to the minor role determination. *See* USSG §1B1.3 (in a conspiracy, relevant conduct includes "all acts and omissions of **others** that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity...that occurred...in preparation for that offense.") (emphasis added). In other words, the Court can and must consider the roles of the other discernable participants in the conspiracy.

The rest of the Government's argument confuses the word "minor" with "scarce" or "few." A conspiracy—especially a drug distribution conspiracy—can

2

contain a large number of individuals with minor roles and a small number with significant roles. That doesn't make the minor roles less minor.  Should Mr. Robles's relevant conduct be compared to a cartel leader? Yes. Is that the only person Mr. Robles should be compared to? Obviously not. But to say that "there are some individuals" who would be more culpable and "many, many individuals who are less culpable" than Mr. Robles both misses the point and ignores the relevant conduct in this case. (D.E. 49 at 5.)

First, culpability is not a mathematical equation. Mr. Robles pleaded guilty to a drug distribution conspiracy involving 400 kg of cocaine. Anyone who played a discernible role in that conspiracy can be compared to Mr. Robles. More importantly, the very nature of this type of crime involves more individuals who play minor roles than those who play major roles. That isn't an argument against granting those minor participants a reduction; it is a criticism of how drug trafficking organizations are structured. Mr. Robles isn't responsible for that.

Second, as the Government concedes, the Court must look at the roles of "discernable participants" when conducting its comparison. Nowhere in the Government's omnibus response does it allege that Mr. Robles (1) understood the scope and structure of the criminal activity; (2) participated in planning or organizing the criminal activity; (3) exercised any decision-making authority or influenced the exercise of decision-making authority; or (4) had a proprietary interest in the criminal activity. *See* USSG §3B1.2, comment. n.3(C). Mr. Robles didn't load the boat. Mr. Robles didn't choose its destination or when it would embark. Mr. Robles didn't choose

3

the weight of the drugs to be transported. Mr. Robles didn't choose what kind of boat or engines to use. He didn't buy the fuel. And yes, like the Government notes, he didn't grow the cocaine, package the cocaine, or sell the cocaine. But just because Mr. Robles' role is minor does not mean that everyone else in the conspiracy's role must be major. That is not how the guideline is worded and certainly not how it is meant to apply. Had the laborer in the field been arrested or the individual working naked to cut and package the cocaine been arrested, they too would qualify for a minor role reduction. *See* Gov't Resp. at 5.

Mr. Robles is one of the most vulnerable participants in a long chain of co-conspirators, almost all of whom are more culpable of distributing cocaine. His role as a drug courier makes him expendable to the drug trafficking organizations and, contrary to the Government's assertion, easily replaceable. His "special skills" are no different than the countless other impoverished fishermen who inhabit the coasts of Ecuador, Colombia, and the Dominican Republic. The Court should sustain Mr. Robles' objection and grant him a minor role adjustment.

## II.   **51 months is sufficient but not greater than necessary to accomplish the needs set forth in § 3553(a).**

Over the past decade, there has been a recognition by the United States Sentencing Commission, Congress, and several Presidents that our drug laws are—in certain cases like this one—unduly retributive. Starting with the 2015 amendment to the Sentencing Guidelines discussed above, the expansion of the safety valve in the First Step Act of 2018, and the adoption of new guideline amendments earlier this month, legal experts and legislators alike have recognized that drug couriers with no

criminal history are deserving of lower sentences. Just two weeks ago, the Sentencing Commission adopted a number of amendments to the guidelines. Those amendments will take effect on November 1, 2023. One of those amendments, a new §4C1.1 titled "Adjustment for Certain Zero-Point Offenders," grants a two-level decrease for defendants who meet all of the ten requirements in that section. Mr. Robles meets all of those requirements and should be given an additional two-level reduction, which would make his total offense level 24.

### A. Mr. Robles was recruited to be a drug courier because of his socioeconomic status.

According to Fides, a Catholic news agency, the province of Guajira is the most impoverished region of Colombia with 55.8% of the population living in poverty and 25.7% living in extreme poverty.[2] 11.7% of the population suffers from chronic malnutrition. In Riohacha, the provincial capital of Guajira, where Mr. Robles grew up and was living before his arrest, the numbers are even higher. Poverty disproportionately affects the large indigenous population in Guajira. The cartels know that the region's inhabitants are among Colombia's most desperate and marginalized. In Mr. Robles' case, he was offered $8,000 USD—a life changing amount of money for someone who dropped out of school in the seventh grade and was only able to belatedly complete the ninth grade. (PSI ¶ 49.) The Government's response pretends that all decisions to commit crime are made in a vacuum. *See* Gov't

---

[2] *Guajira: hunger, thirst, poverty, lack of education*, Agenzia Fides, June 16, 2016, available at: http://www.fides.org/en/news/60246-AMERICA_COLOMBIA_Guajira_hunger_thirst_poverty_lack_of_education.

Resp. at 7. But a person's motivations matter and can be mitigating. Here, Mr. Robles made the worst decision of his life, but it was an aberrant decision and it was done to help his family.

Granting Mr. Robles's PSI objections and reducing his offense level by two-levels in light of the recently adopted guideline amendments does not minimize the seriousness of his offense. Nor, like the Government suggests, is it a "ploy for sympathy." *Id.* The guidelines specifically punish defendants who take advantage of vulnerable victims more harshly. *See* USSG §3A1.1. Accordingly, defendants like Mr. Robles, who themselves are taken advantage of, should be punished less harshly.

### B. None of the Government's reasons for denying a downward variance are compelling.

First, Mr. Robles is only asking for a downward variance if the Court overrules his PSI objections or does not apply the §4C1.1 adjustment. Otherwise, Mr. Robles's sentence request is within the advisory guideline range for a defendant with an offense level of 24 and criminal history category I (51-63 months).[3]

Second, to sentence Mr. Robles as if he was responsible for "the toll taken by drugs on the American people" would be senseless. (*Id.*) A sentence of 108 to 135 months is purely retributive and lacks the deterrent value claimed by the Government. The United States Sentencing Commission has already come to the conclusion, by its adoption of the safety valve, the 2015 amendment, and the new

---

[3] As acknowledged by U.S. Probation in its addendum, D.E. 51-1 at 3, should the Court sustain all of Mr. Robles's objections, "his total offense level would be 26, and with a criminal history category I, his guideline imprisonment rage would be 63 to 78 months."

§4C1.1 adjustment, that deterrence in these types of cases can be accomplished without resorting to unreasonably long sentences. A sentence of 51 months does not mean "the Court has a diminished expectation of law-abiding behavior from the poor." (D.E. 49 at 7.) It means that the Court recognizes Mr. Robles's personal circumstances and is sentencing him as an individual. That is exactly what § 3553(a) requires.

## CONCLUSION

A sentence of 51 months' imprisonment reflects Mr. Robles's minor role in an otherwise serious offense; such a sentence would, after applying minor role and the new zero-point offender adjustment, be within the advisory guideline range; and it is sufficient to comply with the sentencing purposes articulated in 18 U.S.C. § 3553(a).

Respectfully Submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

*s/ Andrew S. Jacobs*
Andrew S. Jacobs
Assistant Federal Public Defender
Florida Special Bar No. A5502687
150 W. Flagler St., Ste. 1700
Miami, FL 33130
305-533-4201
Andrew_Jacobs@fd.org

8

## CERTIFICATE OF SERVICE

I HEREBY certify that on April 17, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:    */s/ Andrew S. Jacobs*
        Andrew S. Jacobs